Barney, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
This suit grows out of a contract for the furnishing of materials necessary in the construction of the Colon waterworks, in the Canal Zone. Accompanying the proposal for *210 bids was a drawing called “No. 12-3-79,” composed of six schedules upon which were listed the items required to be furnished under the proposed contract. Five of these schedules were identical as to the statements above the several columns therein, giving information as to the quantities and character of materials to be furnished. The other schedule (which will hereafter be termed the “sixth schedule”) was much smaller than the others, except one, alongside of which it was placed in the lower right-hand corner of said drawing. The first column in the five schedules mentioned was headed “No. req.,” and the second column “No. to be furnished by contractor.” The headings of the several columns in the said sixth schedule were none of them like those in the other five, contained no column marked “No. req.,” and the last column was headed “Lin. ft. to be furnished by contractor.”
This drawing was prepared for the purpose of informing bidders as to the character of material required and to be covered by the contract, as well as the amount of the same; the heading “No. req.,” meaning “number required.” There was also a note at the bottom of the schedule attached to the invitations to bidders giving a list of material then on hand on the Isthmus, and which would not be required to be furnished by bidders, though shown on said drawing 12-3-79.
It is perhaps no wonder that confusion arose among bidders regarding this invitation as to just what was required to be furnished. It was certainly so as to the claimant. This confusion arose as to the meaning of the first two headings in the five schedules mentioned, viz: “No. req.” and “No. to be furnished by contractor,” when considered in connection with the exceptions mentioned in said note. For this reason, before submitting a bid Mr. Hodkinson, the agent of the claimant, had a conversation over the telephone with Maj. Boggs, the general purchasing agent of the Canal Commission at Washington, asking for definite instructions as to these five schedules; and Maj. Boggs, not having said drawing then before him, informed Mr. Flod-kinson that he would look the matter up and wire him the *211 desired information. Accordingly tbe nest day lie wired Mr. Hodkinson as follows:
“ Circular seven thirty-nine. Referring to your telephonic conversation to-day, lump-sum price should include all material listed in column headed number to be furnished by contractor drawing twelve three seventy-nine after deducting list of material shown on page two of circular. Disregard column headed number required.”
The claimant then submitted its bid, accompanying the same with a letter in which it was stated:
“ On drawing No. 12-3-79 is shown one column indicating ‘ No. required’ and another column indicating ‘No. to be furnished by the contractor.’ On page 2 of the proposal is given a list of items corresponding to those shown on drawing No. 12-3-79 and which ‘will be supplied from stock on the Isthmus and are therefore not required to be furnished by the contractor.’ The explanatory note at the bottom of this list of materials in stock does not make clear how many of each item shall be supplied by the contractor. Therefore,' in accordance with your wire to us, dated the 27th inst., our proposal contemplates only the materials listed in column) headed ‘ Number to be furnished by contractor ’ on drawing No. 12-3-79 after deducting list of material shown on page 2 of circular No. 739.”
This bid was accepted, and a formal contract forwarded to the claimant embracing the items in the five schedules under the heading “ No. to be furnished by contractor,” as well as the items in the sixth schedule headed “ Lin. ft. to be furnished by contractor.” Thereupon there was correspondence had between the claimant and the Canal Commision, the claimant contending that the items in the sixth schedule should not be included in the contract under the interpretation given to said drawing 12-3-79 by the telegram of Map Boggs above quoted, but the Canal Commission contending that the telegram only related to the first five schedules, and that there never was any doubt or explanation asked or required as to the sixth schedule. Finally the claimant returned the contract to the Canal Commission duly executed on its part, but under protest for the reasons already given as to its inclusion of the items named in the sixth schedule. The contract was then executed by the Canal Commission, *212 and the claimant was informed of that fact by a letter from Maj. Boggs containing the following statement: “In view of your contention, this contract is executed by the Commission without prejudice to your claim for additional compensation as to the items specified.” It is for the cost of these items, $1,021.98, that this suit is brought.
Without either discussing or deciding the question of the effect of the reservation to the claimant beyond the terms of the contract as executed, contained in the letter of Maj. Boggs informing the claimant of its execution by the Canal Commission, we shall decide the case upon the assumption that such. reservation brings before us all of the contro-veries and correspondence preliminary to its final execution. As before stated, there was quite likely reason. for some confusion in the minds of bidders upon the invitation as to just what would be required to be furnished. But such confusion related only to the five schedules containing the apparently conflicting headings “ No. req.” and “ No. to be furnished by contractor,” and there is nothing in the evidence to show that any doubt' ever arose as to what was required under the sixth schedule. In fact, the latter schedule was never mentioned or discussed in the telephonic communication before the bid was made by the claimant, and it is at least doubtful if it was ever mentioned at any time. The whole preliminary explanation referred to the first five schedules and the apparent conflicting headings above noted. It is in the light of this fact that the telegram of Maj. Boggs as well as the letter of the claimant accompanying its bid.should be interpreted. The whole story, briefly told, is as follows: The claimant was in doubt as to what was required under the first five schedules, this doubt arising from the incongruous headings, and he asked Maj. Boggs to explain, and was told by the latter that as to those schedules the column headed' “ No. req.” was to be disregarded. The claimant then made its bid with the explanation that (“in accordance with your wire”) its proposal only referred to the column headed “ No. to be furnished by contractor.” This whole transaction had reference to the first five schedules and nothing else. Schedule 6 needed no explanation as to its meaning, and none was asked. *213 The invitation called for bids as “shown upon drawing 12-3-79,” and that the material mentioned in the sixth schedule .thereon was required was so plainly stated that no questions ever arose upon that subject. It is a constrained and unauthorized construction, indeed, to contend that the discussions and the confusion arising under the other schedules ever had any reference to the sixth schedule.
It is possible, and from some of the circumstances of the case we think quite likely, that the claimant, in making its bid, overlooked this comparatively insignificant item, but it was not led into that error by anything said or done by the Canal Commission. There was no mutual mistake, because the Canal Commission always considered, as it was justified in doing, that claimant’s bid included this item, and if the claimant did not it was its own oversight, for which there is no remedy.
It follows from the foregoing that the petition must be dismissed.
Booth, Judge, dissents.